**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>RANULFO ANTONIO JUAREZ-HERNANDEZ,<br><br>        Defendant. | No. 15-CR-7-LRR<br><br>**ORDER** |

*TABLE OF CONTENTS*

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT PROCEDURAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . *2*

*III. STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV. RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . *3*

*V.  ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *A.   Public Place.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     *B.   Inevitable Discovery.* . . . . . . . . . . . . . . . . . . . . . . . *7*
     *C.   Exigent Circumstances.* . . . . . . . . . . . . . . . . . . . . . . *10*

*VI. CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*I. INTRODUCTION*

The matters before the court are the government's objections ("Government Objections") (docket no. 26) and Defendant Ranulfo Antonio Juarez-Hernandez's objections ("Defense Objections") (docket no. 27) to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 22), which recommends that the court deny Defendant's Motion to Suppress ("Motion") (docket no. 12).

## II. RELEVANT PROCEDURAL BACKGROUND

On January 27, 2015, a grand jury returned a two-count Indictment (docket no. 2) charging Defendant with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 and conspiracy to distribute and possession with intent to distribute marijuana in violation of 21 U.S.C. § 846. On February 27, 2015, Defendant filed the Motion. On March 6, 2015, the Government filed a Resistance (docket no. 16). On March 10, 2015, Judge Scoles held a hearing ("Hearing") on the Motion. *See* March 10, 2015 Minute Entry (docket no. 17). Defendant appeared in court with his attorney, Cory Goldensoph. Special Assistant United States Attorney Erin Eldridge represented the government. On April 3, 2015, Judge Scoles issued his Report and Recommendation, which recommends that the court deny the Motion. On April 16, 2015, the government filed the Government Objections. On April 17, 2015, Defendant filed the Defense Objections. On May 19, 2015, Defendant filed a "Motion to Reopen the Suppression Hearing Record and for Reconsideration of the Ruling" ("Motion to Reopen") (docket no. 33). On May 26, 2015, Judge Scoles held another hearing, at which he heard additional evidence. *See* May 26, 2015 Minute Entry (docket no. 36). On June 3, 2015, Judge Scoles issued a Supplement to the Report and Recommendation ("Supplement") (docket no. 44), which continues to recommend that the court deny the Motion. On June 17, 2015, Defendant filed Supplemental Objections (docket no. 45). The Report and Recommendation, Government Objections, Defense Objections and Supplemental Objections are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The

district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

In February 2014, officials from Homeland Security Investigations ("HSI") contacted officials at the Drug Enforcement Agency ("DEA") office in Cedar Rapids, Iowa regarding a package sent by Federal Express ("FedEx") from El Paso, Texas, to Urbana, Iowa. The package arrived at the FedEx facility in Urbana on February 14, 2014. Special Agent Tyler Mower of HSI obtained a search warrant for the package. The package contained a water heater full of 37 wrapped bricks of marijuana, weighing 85 pounds.

Agents removed all but roughly 20 pounds of the marijuana and filled the void with cardboard boxes. The agents then resealed the water heater and made it available for pickup at the FedEx facility. On the morning of February 18, 2014, Defendant and two

---

[1] After reviewing the Hearing Transcript (docket no. 23), the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-4. Accordingly, the court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

3

other men retrieved the package from the FedEx facility. Agents followed Defendant and the other two men to a residence in northeast Cedar Rapids.

Upon arriving at the residence, Defendant and the other two men pulled into the driveway and parked in front of a detached garage. Agents then observed the men unload the package and carry it into the garage. The men only partially closed the garage door based on the testimony from the May 26, 2015 hearing, the garage door was open about four to five feet from the ground in other words, it was closed about two to three feet from the top of the garage. The agents were nonetheless able to observe three persons in the garage manipulating the hot water heater within the garage. The agents observed this by driving back and forth on the street. Special Agent David Poe of the DEA testified that agents observed the men open the package and begin to access the inside of the water heater. The agents walked up the driveway, identified themselves as law enforcement and entered the garage. The agents arrested Defendant and the other men and seized the remaining marijuana.

## V. ANALYSIS

Defendant objects to Judge Scoles's legal conclusion that agents arrested Defendant in a public place. *See* Brief in Support of the Defense Objections (docket no. 27-1) at 3-4; Brief in Support of Supplemental Objections (docket no. 45-1) at 2-3. The government objects to Judge Scoles's legal conclusions that the inevitable discovery doctrine does not apply and that there were no exigent circumstances justifying a warrantless search and seizure. *See* Brief in Support of the Government Objections (docket no. 26-1) at 5-10. The court will address each objection in turn.

### A. *Public Place*

Defendant objects to Judge Scoles's conclusion that agents arrested Defendant in a public place. *See* Brief in Support of the Defense Objections at 3-4. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "It

is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)) (internal quotation marks omitted). However, "[t]he warrantless arrest of an individual in a public place upon probable cause . . . does not violate the Fourth Amendment." *Mitchell*, 729 F.3d at 1074 (citing *United States v. Watson*, 423 U.S. 411, 423-24 (1976)). A person is in a public place when they are in an area where they do not maintain an expectation of privacy. *United States v. Santana*, 427 U.S. 38, 42 (1976) (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)). "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Id.* (internal quotation marks omitted). In *Santana*, the defendant was standing in the doorway of her home when police officers arrived to arrest her following a controlled buy of heroin. *Santana*, 427 U.S. at 40. The Supreme Court found that the doorway of the defendant's home constituted a public place because the defendant "was not in an area where she had any expectation of privacy . . . . She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42; *see also Duncan v. Storie*, 869 F.2d 1100, 1102 (8th Cir. 1989) ("The doorway of an individual's home or apartment or hotel room may be a public place for the purpose of making a warrantless arrest if the individual has come to stand in the doorway voluntarily.").

Here, Defendant argues that Judge Scoles's reliance on *Santana* is misplaced because, "[w]ith the obstructions blocking [the] view of the garage, the occupants did not knowingly expose themselves to observers in the street. Under the circumstances, a person in . . . Defendant's position would have thought that there was enough coverage to not be exposed." Brief in Support of the Defense Objections at 4. In addition, Defendant contends that the "act of pulling the garage door down is an act similar to

5

someone putting a 'do not disturb' sign on a hotel room door." Brief in Support of the Supplemental Objections at 2.

After a de novo review of the record, the court agrees with Judge Scoles's conclusion that the government did not violate Defendant's Fourth Amendment rights because agents arrested Defendant in a public place. Although the house and some trees may have partially obstructed the view of the mostly open garage from the street at certain angles, the inside of the mostly open garage was generally visible to any passerby on the street. *See* Government Exhibit 1 (docket no. 18); Hearing Transcript at 13. Indeed, the fact that the agents were able to observe Defendant by driving back and forth on a public street demonstrates that Defendant did not have an expectation of privacy in his mostly open garage. *Santana*, 427 U.S. at 42. Defendant, standing a few feet inside the garage with the garage door mostly open, exposed himself to public view and "was not in an area where [he] had any expectation of privacy . . . . [He] was not merely visible to the public but was as exposed to public view . . . as if [he] had been standing completely outside." *Id*. As evidenced by the agents' ability to observe Defendant from the public street without use of any sense-enhancing technology, Defendant was as "exposed to public view, speech, hearing, and touch as if []he had been standing completely outside h[is] house." *Id.*; *see also Kyllo v. United States*, 533 U.S. 27, 34 (2001) ("[O]btaining by sense-enhancing technology any information regarding the interior of the home that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area' constitutes a search at least where . . . the technology in question is not in general public use." (quoting *Silverman v. United States*, 365 U.S. 505, 512 (1961) (internal citation omitted))).

In his Supplemental Objections, Defendant appears to argue that because officers could not see the faces of the people in the garage and did not otherwise know their identities, they were not justified in making the arrest. The relevant inquiry about whether

6

an officer is justified in making a public arrest is not whether an officer knows the identity of the person committing the crime. Rather, the question is whether the alleged criminal is in a public place and officers have probable cause to believe that the person is committing a crime. If the rule were as Defendant contends, officers would be unable to arrest persons blatantly committing crimes in public places so long as the criminals were wearing masks to shield their identity. In addition, the court disagrees that partially closing the garage door was akin to placing a "do not disturb" sign on a hotel room door. While Defendant may have desired privacy, the relevant question is "the individual's reasonable expectation of privacy." *Mitchell v. Shearrer*, 729 F.3d 1070, 1075 (8th Cir. 2013) (quoting *Duncan*, 869 F.2d at 1102). The fact that officers were able to observe the activity in the garage suggests that Defendant did not have a reasonable expectation of privacy. Accordingly, the court shall overrule the Defense Objections and the Supplemental Objections because the agents lawfully arrested Defendant in a public place.

### B. Inevitable Discovery

The government objects to Judge Scoles's conclusion that the inevitable discovery doctrine does not apply. Because the court has already found that the agents lawfully arrested Defendant, the court need not decide whether the inevitable discovery doctrine applies. Nonetheless, the court shall address this argument. The government argues that "[a]ny contraband in the garage and residence itself would have . . . been inevitably discovered by law enforcement." Brief in Support of the Government Objections at 9.

Where evidence is discovered as a result of the government's violation of the Fourth Amendment, that evidence should not be suppressed "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). To show that the evidence would have inevitably been discovered, the government must establish

> by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been

7

> discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.

*United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)) (internal quotation marks omitted). *But see United States v. Thomas*, 524 F.3d 855, 860-63 (8th Cir. 2008) (Colloton, J., concurring) (arguing that this two-pronged test is both overinclusive and underinclusive, and is inconsistent with Supreme Court precedent).

Judge Scoles found that the government failed to satisfy the second prong. *See* Report and Recommendation at 21-22. The government argues "that the agents' investigative measures while on scene establish that the government was actively pursuing a substantial, alternative line of investigation at the time of any constitutional violation." Brief in Support of the Government Objections at 10. Specifically, the government argues that "[a]gents ran the registration of the vehicles parked in the driveway while they were on scene and would have inevitably and independently determined the identities of the men that way," and "[h]ad they not approached at that time, agents would have also determined the ownership and occupancy of the residence and ultimately obtained a warrant." *Id.*

After a de novo review of the record, the court finds that the inevitable discovery doctrine applies here. Specifically, the court finds that prior to the agents' alleged illegal entry into the garage, the agents were pursuing an investigation that ultimately and inevitably would have led to the lawful seizure of the marijuana. The agents had previously obtained a search warrant that permitted them to search the water heater at the FedEx facility. The search revealed 37 bricks of marijuana, weighing approximately 85 pounds. Agents removed all but 10 bricks, filling the void with cardboard. Agents repackaged the water heater and made it available for pickup. Agents then observed three men in two vehicles retrieve the package from the FedEx facility. Agents followed the

8

vehicles and observed them park in the driveway of a residence in northeast Cedar Rapids. Agents then saw the men unload the water heater and transport it to a detached garage at the residence. Agent Poe testified that the agents ran the license plate numbers to identify the men and apply for a warrant, but before they could get a warrant, agents observed activity within the garage. At this point, had the agents not entered the garage, the agents had probable cause to obtain a warrant to search and seize for a second time the remaining 10 bricks of marijuana as well as the premises containing the marijuana.

The court finds that the agents were actively pursuing a substantial, alternative line of investigation. The alternative line of investigation must be alternative to the illegal search or seizure. The officers were pursing the alternative line by tracing the marijuana-filled water heater to the residence and by running license plate numbers to obtain identity information and use such information to apply for a warrant. In fact, the entire investigation preceding the alleged illegal entry was an investigation alternative to the alleged illegal entry. Had the government not entered the garage, agents would have obtained a warrant and ultimately and inevitably discovered the evidence at issue. Thus, the court finds that the government has proven by a preponderance of the evidence that the marijuana "ultimately or inevitably would have been discovered by lawful means." *Nix*, 467 U.S. at 444. The court notes that this decision comports with the purpose of the inevitable discovery doctrine. Suppressing this evidence would "contravene[] the command of *Nix* that police should not be placed in a worse position than they would have occupied in the absence of error or misconduct." *Thomas*, 524 F.3d at 862 (Colloton, J., concurring) (citing *Nix*, 467 U.S. at 444). That is, were the court to suppress this evidence, the officers would be worse off than had they had not erred by entering the garage because they would have inevitably obtained a warrant and entered the garage after running the license plates of the vehicles parked in the driveway. Accordingly, the court

shall sustain the Government Objections to the extent it argues that the inevitable discovery doctrine applies.

## C. Exigent Circumstances

The government objects to Judge Scoles's conclusion that there were not exigent circumstances justifying Defendant's arrest. Because the court has already found that the agents lawfully arrested Defendant, the court need not decide whether exigent circumstances justified the arrest. Nonetheless, the court shall address this argument.

Warrantless searches and seizures inside a home are presumptively unreasonable. *See Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). However, the warrant requirement is subject to certain reasonable exceptions. *Id.* "One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)) (internal quotation marks omitted).

The Supreme Court recognizes several exigencies, including the "need to prevent imminent destruction of evidence," which "has long been recognized as a sufficient justification for a warrantless search." *Id.* (quoting *Brigham*, 547 U.S. at 403) (internal quotation marks omitted); *see also United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005) ("The risk that evidence will be destroyed during the time required to obtain a search warrant can be an exigent circumstance that justifies a warrantless entry."). To determine whether exigent circumstances justified officers' warrantless entry, courts consider "the circumstances that confronted police at the time of the entry." *Leveringston*, 397 F.3d at 1116. In particular, courts "look objectively at whether a reasonable, experienced police officer would believe evidence was in danger of removal or destruction." *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1004 (8th Cir. 2010). Typically, courts find that risk of destroyed evidence is an exigent circumstance when officers have reason to believe that someone is actively destroying evidence. *See e.g.*, *id.*

10

("After arriving at the house and announcing themselves, the officers witnessed evasive behavior. Gerardo and Alfonso consulted one another, following which Gerardo's feigned confusion appeared to be a delaying tactic during which Alfonso took several plastic bags to the kitchen sink and disposed of their contents. Taken together these circumstances justified the officers' warrantless entry."); *Leveringston*, 397 F.3d at 1116 ("With water continuing to run and a garbage disposal continuing to grind inside [the defendant's] hotel suite, the police had grounds to believe there was a fair probability that evidence of drug trafficking . . . would be lost if they did not make immediate entry.").

Here, the government argues that exigent circumstances justified the agents' warrantless search because agents witnessed the men "clearly taking apart the water heater in order to access and remove the marijuana from the inside compartment" and "[a]n objectively reasonable police officer" could "therefore conclude that there was danger of removal or destruction of evidence of a crime." Brief in Support of the Government Objections at 5 (internal quotation marks omitted) (citation omitted).

After a de novo review of the record, the court agrees with Judge Scoles's conclusion that exigent circumstances did not justify the government's arrest. The government presented no evidence that Defendant or anyone else attempted to destroy the marijuana, or that officers had an objective basis for their belief that evidence would be destroyed. Agent Poe testified at the Hearing that the agents were concerned that Defendant "could have removed some of the marijuana and either possibly consumed it, smoked some right there, or left the . . . area on foot or in a vehicle." Hearing Transcript at 27. However, Agent Poe testified that when the agents approached, "I don't know that I would say they gained access to the inside [of the water heater] yet, but they had started that process by removing the end, one cover off the end of it." *Id.* at 14. Moreover, Agent Poe testified that the agents could clearly observe what was happening in the garage from the street. *Id.* at 13. If agents witnessed the men beginning to destroy the marijuana

11

or fleeing the area with the evidence, that would have constituted an exigent circumstance. Without more evidence, however, the agents had no objective basis to establish an exigency. When the agents approached the garage, there was not a risk that evidence would "be destroyed during the time required to obtain a search warrant." *Leveringston*, 397 F.3d at 1116. Accordingly, the court shall overrule the Government Objections to the extent it argues that exigent circumstances justified the warrantless seizure.

## VI. CONCLUSION

In summary, after a thorough and independent review of the record, the court finds that there were no Fourth Amendment violations. Agents arrested Defendant upon probable cause in a public place. *Mitchell*, 729 F.3d at 1074 (citing *Watson*, 423 U.S. at 423-24). In light of the foregoing, the court **ORDERS**:

(1) The Government Objections (docket no. 26) are **OVERRULED** in part and **SUSTAINED** in part;

(2) The Defense Objections (docket no. 27) are **OVERRULED**;

(3) Defendant's Supplemental Objections (docket no. 45) are **OVERRULED**;

(3) The Report and Recommendation (docket no. 22) is **ADOPTED** in part and **MODIFIED** in part; and

(4) The Motion to Suppress (docket no. 12) is **DENIED**.

**DATED** this 14th day of July, 2015.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA